1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11 | DANIEL STRENFEL, individually and on
behalf of a Class of similarly situated
12 | individuals,

NO.

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL

13 |              Plaintiff,

14 |      v.

15 | T-MOBILE USA, INC., a Delaware
corporation,
16

17 |           Defendant.

18
19
20
21
22
23
24
25

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - i

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

1
2
3
4

Plaintiff Daniel Strenfel, on behalf of himself and all others similarly situated, asserts the following against Defendant T-Mobile USA, Inc. ("T-Mobile") based upon personal knowledge, where applicable, information and belief, and the investigation of counsel.

## INTRODUCTION

5
6
7
8

1.      Plaintiff brings this Class Action Complaint on behalf of customers harmed as a result of T-Mobile's failure to safeguard and protect its customers' highly sensitive and personal information.

9
10

2.      As one of the United States' largest wireless carriers, T-Mobile currently claims to have over 104.8 million customers as of the second quarter of 2021.

11
12
13
14
15

3.      T-Mobile has touted its superior technology to persuade consumers to purchase its services. T-Mobile states that it "is the leader in 5G," offering 5G download speeds, upload speeds, and availability, among other things. T-Mobile's efforts have resulted in wireless coverage that reaches over a hundred million people, representing the best customer growth in the industry.

16
17
18

4.      T-Mobile assures its customers that it uses "administrative, technical, contractual, and physical safeguards designed to protect [customers'] data while it is under [T-Mobile's] control."

19
20
21

5.      T-Mobile's CEO insists that "[k]eeping [T-Mobile] customers' data safe is a responsibility we take incredibly seriously" and that preventing data breaches "has always been a top priority of [T-Mobile's]."

22
23
24

6.      Despite these promises, T-Mobile has repeatedly failed to safeguard the information of its customers responsible for its success, as evidenced by the almost regularly recurring instances of data security deficiencies.

25

7.      In its latest failure, as a result of T-Mobile's lax security protocols, a hacker was

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 1

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

able to uncover an unprotected T-Mobile router exposed on the internet using easy-to-use, publicly available tools. The hacker exploited the vulnerability to gain access to T-Mobile's East Wenatchee, Washington data center and more than 100 T-Mobile servers.

8.      Ultimately, the hacker was able to steal the personal information of millions of customers, including their Social Security numbers, phone numbers, addresses, unique International Mobile Equipment Identity ("IMEI") numbers (unique 15-digit codes that precisely identify the device), and Drivers' License numbers (hereinafter referred to as the "Data Breach.").

9.      According to *Vice's* Motherboard, the Data Breach compromised the personal information of 100 million T-Mobile customers.

10.      The hacker has listed a subset of the personal information for sale on the dark web and stated to *Vice's* Motherboard team that he is privately selling the remainder of the information. *Vice's* Motherboard has seen a subset of the data and confirmed it contains accurate information on T-Mobile customers.

11.      Further, while T-Mobile claims to have secured its publicly accessible servers, the hacker confirmed that he has already uploaded the data locally and saved it in multiple places. Thus, all T-Mobile customers remain at risk.

12.      T-Mobile confirmed the breach on its website on August 16, 2021, advising customers that "unauthorized access to some T-Mobile data occurred" but it could "not yet determine[]" the full scope of the breach. T-Mobile advised its customers that the "investigation will take some time" and it is "coordinating with law enforcement."

13.      On August 17, 2021, T-Mobile provided an update confirming that the breach included at least customers' names, dates of birth, social security numbers, and drivers' license numbers.[1] T-Mobile's "preliminary analysis" determined that approximately 7.8 million

---

[1] On August 18, 2021, T-Mobile confirmed the breach also included T-Mobile account PINs.

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 2

BORDE LAW PLLC
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

postpaid customers, 850,000 prepaid customers, and 40 million former or prospective customers were impacted by the breach.

14.    While T-Mobile continues to investigate the nature of the Data Breach, presently the hacker and those associated with groups buying and selling stolen customer data are taking advantage of another failure by T-Mobile to timely safeguard customer information.

15.    By some accounts, this Data Breach is at least the seventh episode in which T-Mobile failed to protect customer information, dating back to 2017. The continuous onslaught of data breaches is indicative of the woefully negligent data security T-Mobile has in place. Indeed, the hacker responsible for the Data Breach described T-Mobile's security as "awful."

16.    Because Plaintiff's and Class members' personal information has been compromised by a "bad actor," they have sustained immediate, tangible injury. The private customer information for millions of current, former, and prospective T-Mobile's U.S. customers is currently for sale. Further, because the hacker confirmed that the data from T-Mobile's servers is backed up in multiple places, T-Mobile's claims that it is "confident that the entry point . . . has been closed" are of little comfort to those whose data has already been stolen.  The threat of injury is ongoing, and Plaintiff and Class members now face a significant and imminent risk of identity theft, fraud, and even cyber-espionage moving forward, because hackers who commit malicious attacks like this often wait months if not years to use personal information obtained in a data breach.

17.    Plaintiff seeks to remedy these harms on behalf of himself and all similarly situated individuals whose personal information was stolen in the Data Breach. Plaintiff and Class members seek remedies including reimbursement of losses due to identity theft, fraud, and other out-of-pocket costs; compensation for time spent responding to the Data Breach; credit monitoring and identity theft insurance; and injunctive relief requiring an overhaul of T-Mobile's security systems to lessen the chance that another data security incident is just around the corner.

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 3

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

1

## JURISDICTION AND VENUE

2    18.    This Court has jurisdiction over the subject matter of this action pursuant to 28

3 U.S.C § 1332(d), because the amount in controversy for the Class and Subclass exceeds

4 $5,000,000 exclusive of interest and costs, there are more than 100 putative members of the Class

5 and Subclass defined below, and a significant portion of putative Class and Subclass members

6 are citizens of a different state than Defendant.

7    19.    This Court has general personal jurisdiction over T-Mobile because it maintains

8 its principal place of business at 12920 SE 38th St., Bellevue, Washington, 98006.

9    20.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b), (c), and (d)

10 because T-Mobile's principal place of business is located in this District and a substantial portion

11 of the events giving rise to the claims occurred in this District.

## PARTIES

12

13 **I. PLAINTIFF**

14    21.    Plaintiff Daniel Strenfel is a natural person and citizen of the State of California

15 and a resident of Santa Clara.

16    22.    Daniel Strenfel has been a T-Mobile customer for approximately five years.

17 Plaintiff provided T-Mobile with certain personal information, including his name, address, date

18 of birth, and Social Security number, among other things.

19    23.    On August 15, 2021, *Vice's* Motherboard reported that a hacker had offered for

20 sale data from T-Mobile servers containing the personal information of tens of millions of

21 customers. According to *Vice's* Motherboard, data for sale included Social Security numbers,

22 phone numbers, names, physical addresses, unique IMEI numbers, and Drivers' License

23 information. A subset of the stolen data has been offered for sale for approximately $270,000 on

24 an underground internet forum, i.e., the dark web, while the remaining data is being offered to

25 other cyber criminals through private sales.

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 4

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

24.     On August 17, 2021, T-Mobile confirmed on its website that "a bad actor illegally accessed" its systems and that "the data stolen from [T-Mobile's] systems did include . . . personal information."

25.     Plaintiff Strenfel's personal information was compromised as a result of the Data Breach. T-Mobile confirmed as much on August 18, 2021, when it sent a text message to Plaintiff Strenfel stating that "it has determined that unauthorized access to some of [his] personal data has occurred."

26.     Upon information and belief, this information is currently for sale on the dark web or through private sale to cyber criminals.

## II.   DEFENDANT

27.     Defendant T-Mobile is a Delaware corporation with principal executive offices located at 12920 SE 38th St., Bellevue, Washington, 98006.

28.     As of the end of the second quarter of 2021, T-Mobile reported in a regulatory filing that it had a total of 104.8 million customers nationwide using its services.

## FACTUAL BACKGROUND

## III.  T-MOBILE'S LONG HISTORY OF DEFICIENT SECURITY MEASURES

29.     Telecommunication companies are well aware of the dangers of data breaches. As far back as 2015, the U.S. Federal Communications Commission ("FCC") has investigated and charged telecom service providers for failing to protect consumers' personal data. Specifically, the FCC charged two telecom providers more than $3.5 million for a data incident in 2013 that impacted more than 300,000 customers as a result of the companies' failure to store data on a secured server.

30.     T-Mobile is—and at all relevant times has been—aware that the customer information that it obtains and processes is highly sensitive (particularly information such as

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 5

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

Social Security numbers and Drivers' License numbers) and could be used by third parties for nefarious purposes, such as perpetrating identity theft and making fraudulent purchases.

31.     T-Mobile also is—and at all relevant times has been—aware of the importance of safeguarding its customers' sensitive personal information and of the foreseeable consequences that would occur if its data security systems were breached, including losses from fraud and theft. For this reason, T-Mobile assures customers that "[it's] working hard to earn a place in your heart. A big part of that is maintaining your privacy."[2] T-Mobile promises its customers that it uses "administrative, technical, contractual, and physical safeguards designed to protect [customers'] data while it is under [T-Mobile's] control."[3] But these promises are not backed up by action.

32.     Almost every year since at least 2015, T-Mobile consistently suffered and/or disclosed a data security incident that has either exposed its customers' personal information to malicious actors, each time putting them at risk of fraud and identity theft, or otherwise revealed T-Mobile's failure to even minimally protect customer data.

33.     Even when sensitive information, like Social Security numbers, is not disclosed in one of these data breaches, T-Mobile customers are at the very least subject to phishing emails, which is currently the leading method hackers employ to gain access to users' accounts and information. Hackers can combine pieces of personal information from data breaches with other publicly available information to craft specifically targeted phishing emails, placing T-Mobile customers at an even further risk of harm.

34.     Despite these repeated demonstrations of the weaknesses of its data security practices, T-Mobile has failed to take reasonable steps to improve them.

35.     T-Mobile's data breaches date back to 2015, when it reported a data breach to the

---

[2] T-Mobile Privacy Notice, T-MOBILE, https://www.t-mobile.com/privacy-center/our-practices/privacy-policy (last viewed on May 28, 2021).
[3] *Id.*

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 6

California Attorney General, explaining that the breach—occurring for nearly two years—had compromised its customers' personal information, including names, addresses, social security numbers, and/or Drivers' License numbers. While T-Mobile claimed that the data breach was caused by one of its suppliers, its failure to properly vet and monitor its vendors is equally indicative of T-Mobile's failure to properly protect its customers' personal information.  In 2017, the FCC admonished T-Mobile with respect to this breach for failing in "its responsibility owed to its customers to protect their data. Providers are responsible for their supply chain and while they can outsource functions, they cannot transfer accountability."

36.    In August 2018, T-Mobile experienced another data breach that compromised nearly 2 million of its customers' names, zip codes, phone numbers, dates of birth, email addresses, account numbers, and account types.

37.    In 2019, T-Mobile experienced yet another data breach that impacted its pre-paid customers. Approximately one million individuals had their personal information compromised, including names, billing addresses, phone numbers, account numbers, rate plans, and plan features. T-Mobile failed to elaborate further on the breach, but did indicate that there was "malicious, unauthorized access" to customers' sensitive personal information.

38.    In February 2020, the FCC announced a proposed fine against T-Mobile of $91 million for disclosing customer location information to a third party without customer authorization.

39.    On March 5, 2020, T-Mobile notified Plaintiff and other Class members of a "malicious attack" that compromised one set of customers' "names and addresses, phone numbers, account numbers, rate plans and features, and billing information," (Notice 1) and another set of customers' "names and addresses, Social Security numbers, financial account information, and government identification numbers, as well as phone numbers, billing and account information, and rate plans and features" (Notice 2).

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 7

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

40.    In January 2021, T-Mobile disclosed that a second data breach occurred in 2020 impacting approximately 200,000 consumers. The breach compromised users' CPNI data, which includes the frequency, duration, and timing of calls, as well as services purchased by the consumers.

41.    And in or around February 2021, T-Mobile disclosed another data breach that compromised users' names, addresses, account numbers, social security numbers, PIN numbers, account security questions and answers.

42.    This Data Breach is yet the latest in a string of failures by T-Mobile to secure its servers and systems. According to the hacker, John Binns, he was able to access Plaintiff and Class members' records by exploiting an open router that he was able to locate using easy-to-use, publicly available tools.

43.    As a result of T-Mobiles blatant failure to secure its systems, Mr. Binns was able to access T-Mobile's Washington data center and ultimately access more than 100 severs.

44.    Within the course of a week, he was able to lift millions of former, current, and prospective customer's data around August 4, 2021.

45.    T-Mobile never discovered Mr. Binns' conduct independently. Instead, T-Mobile was contacted by an independent security research firm on August 13, 2021, which revealed to T-Mobile that its customer's data was currently for sale on the dark web.

46.    T-Mobile sat on this information for two days and only publicly acknowledged the breach on August 15, 2021, around the same time other news sources were reporting on the breach.

47.    Plainly, T-Mobile's assertions that "[k]eeping [its] customers' data safe is a responsibility [it] take[s] incredibly seriously", that its "working to enhance security", and employs "administrative, technical, contractual, and physical safeguards designed to protect [customers'] data" lack substance.

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 8

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

**T-Mobile's Data Security Failures**

48.    Up to, and including, the period when the Data Breach occurred, T-Mobile breached its duties, obligations, and promises to Plaintiff and Class members, by its failure to:

(a)    hire qualified personnel and maintain a system of accountability over data security, thereby knowingly allowing data security deficiencies to persist;

(b)    properly train its employees about the risk of cyberattacks and how to mitigate them, including by failing to implement adequate security awareness training that would have instructed employees about the risks of common techniques, what to do if they suspect such attacks, and how to prevent them;

(c)    address well-known warnings that its systems and servers were susceptible to a data breach;

(d)    implement certain protocols that would have prevented unauthorized programs, such as malware, from being installed on its systems that accessed customers' personal information and otherwise would have protected customers' sensitive personal information;

(e)    install software to adequately track access to its network, monitor the network for unusual activity, and prevent exfiltration of data, which would have detected the presence of hackers and prevented customers' sensitive personal information from being stolen. Specifically, there are recommended, available measures to prevent data from leaving protected systems and being sent to untrusted networks outside of the corporate systems; and

(f)    adequately safeguard customers' sensitive personal information and maintain an adequate data security environment to reduce the risk of a data breach or unauthorized disclosure.

## IV.  T-MOBILE VIOLATED THE FTC ACT

49.    According to the Federal Trade Commission ("FTC"), the failure to employ reasonable and appropriate measures to protect against unauthorized access to sensitive personal information constitutes an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act of 1914 ("FTC Act"), 15 U.S.C. § 45.

50.    In 2007, the FTC published guidelines that establish reasonable data security

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 9

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

practices for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies for installing vendor-approved patches to correct security problems. The guidelines also recommend that businesses consider using an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone may be trying to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

51.     The FTC has also published a document entitled "FTC Facts for Business," which highlights the importance of having a data security plan, regularly assessing risks to computer systems, and implementing safeguards to control such risks.

52.     The FTC has issued orders against businesses that have failed to employ reasonable measures to secure sensitive personal information. These orders provide further guidance to businesses regarding their data security obligations.

53.     In the years leading up to the Data Breach, and during the course of the breach itself, T-Mobile failed to follow guidelines set forth by the FTC and actively mishandled the management of its IT security. Furthermore, by failing to have reasonable data security measures in place, T-Mobile engaged in an unfair act or practice within the meaning of Section 5 of the FTC Act.

**V.  T-MOBILE VIOLATED THE FCA ACT**

54.     As a common carrier, T-Mobile is obligated to protect the confidential personal information of its customers under Section 222 of the Federal Communication Act ("FCA"), 47 U.S.C. § 222.

55.     FCA Section 222(a) provides that "[e]very telecommunications carrier has a duty to protect the confidentiality of proprietary information of, and relating to . . . customers . . . ."

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

Such customer information under the FAC, referred to as "customer proprietary network information" ("CPNI") includes "(A) information that relates to the quantity, technical configuration, type, destination, location, and amount of use of a telecommunications service subscribed to by any customer of a telecommunications carrier, and that is made available to the carrier by the customer solely by virtue of the carrier-customer relationship; and (B) information contained in the bills pertaining to telephone exchange service or telephone toll service received by a customer of a carrier." FCA § 222(h)(1).

56.    Absent customer approval or unless required by law, CPNI may only be disclosed to provide telecommunication services or services necessary to or used to provide telecommunication services. FCA § 222(c).

57.    The FCC has promulgated rules implementing FCA Section 222 that require common carriers to implement safeguards to protect CPNI.  *See* 47 CFR § 64.2001 et seq. ("CPNI Rules"); CPNI Order, 13 FCC Rcd. at 8195 ¶ 193.

58.    T-Mobile has repeatedly failed to implement reasonable safeguards to protect Class members' CPNI, most recently with the Data Breach that resulted in the disclosure of IMEI numbers and any other billing related data.

59.    Indeed, the FCC announced on August 18, 2021, that "[t]elecommunications companies have a duty to protect their customers' information. The FCC is aware of reports of a data breach affecting T-Mobile customers and we are investigating."

60.    In its conduct, T-Mobile has been at a minimum negligent in its duty to protect the covered confidential proprietary information.

## VI. THE DATA BREACH DAMAGED PLAINTIFF AND CLASS MEMBERS

61.    As a result of T-Mobile's deficient security measures, Plaintiff and Class members have been harmed by the compromise of their sensitive personal information, which is currently for sale on the dark web and through private sale to other cyber criminals.

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 11

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

62. Plaintiff and Class members also face a substantial and imminent risk of fraud and identity theft. Cyber criminals carried out the Data Breach and stole sensitive personal information with the intent to use it for fraudulent purposes and/or to sell it, as the attack was described by T-Mobile as "illegal" and requiring the assistance of law enforcement.

63. Furthermore, Plaintiff and Class members will experience an increased likelihood of identity theft and fraud going forward. This is especially true as names, addresses, Social Security numbers, and unique IMEI numbers were compromised as a result of the breach. These specific types of information are associated with a high risk of fraud.

64. Many Class members will also incur out of pocket costs for protective measures such as identity theft protection, credit monitoring fees, credit report fees, credit freeze fees, fees for replacement cards, and similar costs related to the Data Breach.

65. Plaintiff and Class members also suffered a "loss of value" of their sensitive personal information when it was stolen by a hacker in the Data Breach. A robust market exists for stolen personal information. Hackers sell personal information on the dark web—an underground market for illicit activity, including the purchase of hacked personal information—at specific identifiable prices. In fact, hackers have reportedly already offered Plaintiff's and Class members' information for sale on the dark web at the price of $270,000. This market serves as a means to determine the loss of value to Plaintiff and Class members.

66. Plaintiff's and Class members' stolen personal information is a valuable commodity to identity thieves. William P. Barr, former United States Attorney General, made clear that consumers' sensitive personal information commonly stolen in data breaches "has economic value."[4] The purpose of stealing large caches of personal information is to use it to defraud consumers or to place it for illegal sale and to profit from other criminals who buy the

---

[4] *See Attorney General William P. Barr Announces Indictment of Four Members of China's Military for Hacking into Equifax*, DEP'T OF JUSTICE, (Feb. 10, 2020) https://www.justice.gov/opa/speech/attorney-general-william-p-barr-announces-indictment-four-members-china-s-military.

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 12

BORDE LAW PLLC
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

data and use it to commit payment card fraud. One commentator confirmed, explaining that, "[m]ost of the time what [data breach hackers] do is they steal the data and then they sell the data on the dark web to the people who actually commit the fraud."[5] In fact, Plaintiff's and Class members' personal information is currently available for purchase on the dark web and/or through private sale to other cyber criminals.

67.    Identity thieves can also combine data stolen in the Data Breach with other information about Plaintiff and Class members gathered from underground sources, public sources, or even Plaintiff's and Class members' social media accounts. Thieves can use the combined data to send highly targeted phishing emails to Plaintiff and Class members to obtain more sensitive information. Thieves can use the combined data to commit potential crimes, including opening new financial accounts in Plaintiff's and Class members' names, taking out loans in Plaintiff's and Class members' names, using Plaintiff's and Class members' information to obtain government benefits, filing fraudulent tax returns using Plaintiff's and Class members' information, obtaining Drivers' Licenses in Plaintiff's and Class members' names but with another person's photograph, and giving false information to police during an arrest.

68.    Plaintiff and Class members also suffered "benefit of the bargain" damages. Plaintiff and Class members overpaid for services that should have been—but were not—accompanied by adequate data security. Part of the monthly charges and fees Plaintiff and Class members paid to T-Mobile were intended to be used to fund adequate data security. Plaintiff and Class members did not get what they paid for.

69.    Plaintiff and Class members have spent and will continue to spend substantial amounts of time monitoring their accounts for identity theft and fraud, the opening of fraudulent accounts, disputing fraudulent transactions, and reviewing their financial affairs more closely

---

[5] See *Legislator, security expert weigh in on Rutter's data breach*, ABC NEWS, (last updated Feb. 17, 2020 8:47 AM), https://www.abc27.com/news/local/york/legislator-security-expert-weigh-in-on-rutters-data-breach/.

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

than they otherwise would have done but for the Data Breach. These efforts are burdensome and time-consuming, especially because T-Mobile has failed to disclose when the breach occurred or how long it lasted, forcing customers to continue to monitor their accounts indefinitely.

70.     Class members who experience actual identity theft and fraud will also be harmed by the inability to use their credit or debit cards when their accounts are suspended or otherwise rendered unusable due to fraudulent charges. To the extent Class members are charged monthly/annual fees for their credit and/or debit accounts, they are left without the benefit of that bargain while they await receipt of their replacement cards. Class members will be harmed further by the loss of rewards points or airline mileage that they cannot accrue while awaiting replacement cards. The inability to use payment cards may also result in missed payments on bills and loans, late charges and fees, and adverse effects on their credit, including decreased credit scores and adverse credit notations.

71.     In the case of a data breach, merely reimbursing a consumer for a financial loss due to identity theft or fraud does not make that individual whole again. On the contrary, after conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems."[6]

72.     A victim whose personal information has been stolen or compromised may not see the full extent of identity theft or fraud until long after the initial breach. Additionally, a victim whose personal information (including Social Security numbers) has been stolen may not become aware of charges when they are nominal, as typical fraud-prevention algorithms may not capture such charges. Those charges may be repeated, over and over again, on a victim's account.

---

[6] *See* Erika Harrell, Ph.D. and Lynn Langton, Ph.D., *Victims of Identity Theft, 2012*, U.S. Department of Justice, Bureau of Justice Statistics (Dec. 2013), at 1.

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 14

BORDE LAW PLLC
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

73.     The risk of identity theft and fraud will persist for years. Identity thieves often hold stolen data for months or years before using it to avoid detection. Also, the sale of stolen information on the dark web may take months or more to reach end-users, in part because the data is often sold in small batches to various individuals rather than in bulk to a single buyer. Thus, Plaintiff and Class members must vigilantly monitor their financial accounts *ad infinitum*.

## CLASS ACTION ALLEGATIONS

74.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and (b)(3) on behalf of the following Nationwide Class:

> All persons in the United States whose personal information was compromised in the Data Breach made public by T-Mobile in August 2021 ("**Nationwide Class**").

75.     Excluded from the Nationwide Class is T-Mobile and its subsidiaries and affiliates; all employees of T-Mobile and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Nationwide Class; Plaintiff's counsel and Defendant's counsel and members of their immediate families; anyone who participated in the Data Breach (including Mr. Binns); government entities; and the judge to whom this case is assigned, including his/her immediate family and court staff.

76.     Plaintiff reserves the right to modify, expand or amend the above Nationwide Class definition or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

## CALIFORNIA SUBCLASS

77.     Plaintiff bring this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and (b)(3) on behalf of the following California Subclass:

> All persons in California whose personal information was compromised in the Data Breach made public by T-Mobile in August 2021 ("**California Subclass**").

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

78.     Excluded from the California Subclass is T-Mobile and its subsidiaries and affiliates; all employees of T-Mobile and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the California Subclass; Plaintiff's counsel and Defendant's counsel and members of their immediate families; anyone who participated in the Data Breach; government entities; and the judge to whom this case is assigned, including his/her immediate family and court staff.

79.     Plaintiff reserves the right to modify, expand or amend the above California Subclass definition or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

80.     Certification of Plaintiff's claims for class-wide treatment are appropriate because all elements of Fed. R. Civ. P. 23(a) and (b)(2)-(3) are satisfied. Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

81.     **Numerosity:** All requirements of Fed. R. Civ. P. 23(a)(1) are satisfied. The members of the Nationwide Class and California Subclass are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While Plaintiff is informed and believes that there are likely millions of members of the Classes, the precise number of Class members is unknown to Plaintiff. Class members may be identified through objective means. Class members may be notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

82.     **Commonality and Predominance:** All requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) are satisfied. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 16

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

a.    Whether T-Mobile engaged in active misfeasance and misconduct alleged herein;

b.    Whether T-Mobile owed a duty to Class members to safeguard their sensitive personal information;

c.    Whether T-Mobile breached its duty to Class members to safeguard their sensitive personal information;

d.    Whether T-Mobile knew or should have known that its data security systems and monitoring processes were deficient;

e.    Whether Plaintiff and Class members suffered legally cognizable damages as a result of the Data Breach;

f.    Whether T-Mobile's failure to provide adequate security proximately caused Plaintiff's and Class members' injuries; and

g.    Whether Plaintiff and Class members are entitled to declaratory and injunctive relief.

83.    **Typicality:** All requirements of Fed. R. Civ. P. 23(a)(3) are satisfied. Plaintiff is a member of the Nationwide Class and California Subclass. Plaintiff's claims are typical of the claims of all Class members because Plaintiff, like other Class members, suffered theft of his sensitive personal information in the Data Breach.

84.    **Adequacy of Representation:** All requirements of Fed. R. Civ. P. 23(a)(4) are satisfied. Plaintiff is an adequate Class representative because he is a member of both the Nationwide Class and California Subclass and his interests do not conflict with the interests of other Class members that they seek to represent. Plaintiff is committed to pursuing this matter for the Class with the Class's collective best interest in mind. Plaintiff has retained counsel competent and experienced in complex class action litigation of this type and Plaintiff intends to prosecute this action vigorously. Plaintiff, and his counsel, will fairly and adequately protect the Class's interests.

85.    **Predominance and Superiority:** All requirements of Fed. R. Civ. P. 23(b)(3) are satisfied. As described above, common issues of law or fact predominate over individual

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 17

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

issues. Resolution of those common issues in Plaintiff's case will also resolve them for the Class's claims. In addition, a class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against T-Mobile, so it would be impracticable for members of the Class to individually seek redress for T-Mobile's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

86.     **Cohesiveness:** All requirements of Fed. R. Civ. P. 23(b)(2) are satisfied. T-Mobile has acted, or refused to act, on grounds generally applicable to the Nationwide Class and California Subclass such that final declaratory or injunctive relief is appropriate.

87.     Plaintiff reserves the right to revise the foregoing class allegations and definitions based on newly learned facts or legal developments that arise following additional investigation, discovery, or otherwise.

## CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE
### (on behalf of the Nationwide Class)

88.     Plaintiff re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

89.     T-Mobile obtained Plaintiff's and Class members' sensitive personal information in connection with Plaintiff and Class members signing up for T-Mobile's wireless services.

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 18

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

90.    By collecting and maintaining sensitive personal information, T-Mobile had a common law duty of care to use reasonable means to secure and safeguard the sensitive personal information and to prevent disclosure of the information to unauthorized individuals. T-Mobile's duty included a responsibility to implement processes by which it could detect a data breach of this type and magnitude in a timely manner.

91.    T-Mobile owed a duty of care to Plaintiff and Class members to provide data security consistent with the various statutory requirements, regulations, and other notices described above.

92.    T-Mobile's duty of care arose as a result of, among other things, the special relationship that existed between T-Mobile and its customers. T-Mobile was the only party in a position to ensure that its systems were sufficient to protect against the foreseeable risk that a data breach could occur that would result in substantial harm to consumers.

93.    T-Mobile was subject to an "independent duty" untethered to any contract between Plaintiff and Class members and T-Mobile.

94.    T-Mobile breached its duties, and thus was negligent, by failing to use reasonable measures to protect customers' sensitive personal information. T-Mobile's negligent acts and omissions include, but are not limited to, the following:

a.    failure to employ systems and educate employees to protect against malware;

b.    failure to comply with industry standards for software and server security;

c.    failure to track and monitor access to its network and personal information;

d.    failure to limit access to those with a valid purpose;

e.    failure to adequately staff and fund its data security operation;

f.    failure to remove, delete, or destroy highly sensitive personal information of consumers that is no longer being used for any valid business purpose;

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 19

BORDE LAW PLLC
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

g.    failure to use due care in hiring, promoting, and supervising those responsible for its data security operations; and

h.    failure to recognize a hacker was stealing personal information from its network while the Data Breach was taking place.

95.    It was foreseeable to T-Mobile that a failure to use reasonable measures to protect its customers' sensitive personal information could result in injury to consumers. Further, actual and attempted breaches of data security were reasonably foreseeable to T-Mobile given the known frequency of data breaches and various warnings from industry experts. Indeed, the Data Breach was foreseeable to T-Mobile as it suffered numerous breaches in the years preceding the Data Breach, yet it failed to rectify its deficient data security.

96.    As a direct and proximate result of T-Mobile's negligence, Plaintiff and Class members sustained damages as alleged herein. Plaintiff and Class members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

97.    Plaintiff and Class members are also entitled to injunctive relief requiring T-Mobile to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) provide free credit monitoring and identity theft insurance to all Class members.

**COUNT II**
**NEGLIGENCE *PER SE***
**(on behalf of the Nationwide Class)**

98.    Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

99.    T-Mobile is liable for negligence *per se* independently for each violation of the following statutes.

**Negligence *Per Se* Pursuant to the FTC Act, 15 U.S.C. § 45**

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 20

BORDE LAW PLLC
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

100.    As alleged above, pursuant to the FTC Act, 15 U.S.C. § 45, T-Mobile had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class members' sensitive personal information.

101.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the failure to use reasonable measures to protect sensitive personal information. The FTC publications and orders described above also form part of the basis of T-Mobile's duty.

102.    T-Mobile violated Section 5 of the FTC Act by failing to use reasonable measures to protect sensitive personal information and comply with applicable industry standards, including the FTC Act, as described in detail herein. T-Mobile's conduct was particularly unreasonable given the nature and amount of sensitive personal information it collected and stored and the foreseeable consequences of a data breach, including specifically, as described herein, the damages that would result to consumers.

103.    T-Mobile's services related to the protection of sensitive personal information of its customers is activity that falls outside the provision of common carrier services.

104.    Plaintiff and members of the Class are within the class of persons that Section 5 of the FTC Act was intended to protect, because the FTC Act was expressly designed to protect consumers from "substantial injury."

105.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and Class members.

106.    T-Mobile had a duty to Plaintiff and Class members to implement and maintain reasonable security procedures and practices to safeguard Plaintiff's and Class members' sensitive personal information.

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 21

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

107.    T-Mobile breached its duties to Plaintiff and Class members under the FTC Act, by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class members' sensitive personal information.

108.    T-Mobile's violation of Section 5 of the FTC Act and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

109.    But for T-Mobile's wrongful and negligent breach of its duties owed to Plaintiff and Class members, Plaintiff and Class members would not have been injured, or would not have been injured to as great a degree.

110.    The injury suffered by Plaintiff and Class members was a reasonably foreseeable result of T-Mobile's breach of its duties. T-Mobile knew or should have known that the breach of its duties would cause Plaintiff and Class members to suffer the foreseeable harms associated with the exposure of their sensitive personal information.

111.    As a direct and proximate result of T-Mobile's negligence *per se*, Plaintiff and Class members sustained damages as alleged herein. Plaintiff and Class members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

112.    Plaintiff and Class members are also entitled to injunctive relief requiring T-Mobile to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) provide free credit monitoring and identity theft insurance to all Class members.

**Negligence Per Se Pursuant to the FCA Section 222, 47 U.S.C. § 222**

113.    As alleged above, pursuant to the FCA, 47 U.S.C. § 222, T-Mobile had a duty to protect the confidentiality of proprietary information of and relating to its customers.

114.    T-Mobile violated Section 222 of the FCA by failing to use reasonable measures to protect CPNI and comply with applicable industry standards. T-Mobile's conduct was

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 22

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

particularly unreasonable given the nature and amount of sensitive CPNI data it collected and stored and the foreseeable consequences of a data breach, including specifically, as described herein, the damages that would result to consumers.

115.   Plaintiff and members of the Class are within the class of persons that Section 222 of the FCA was intended to protect, because the Section 222 was expressly designed to protect the privacy of customer information. Section 206 of the FCA provides that if "any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case."

116.   The harm that has occurred is the type of harm the FCA is intended to guard against, namely, the disclosure of customers' private information.

117.   T-Mobile had a duty to Plaintiff and Class members to implement and maintain reasonable security procedures and practices to safeguard Plaintiff's and Class members' CPNI data.

118.   T-Mobile breached its duties to Plaintiff and Class members under the FCA, by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class members' CPNI data.

119.   T-Mobile's violation of Section 222 of the FCA Act and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 23

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

120.     But for T-Mobile's wrongful and negligent breach of its duties owed to Plaintiff and Class members, Plaintiff and Class members would not have been injured, or would not have been injured to as great a degree.

121.     The injury suffered by Plaintiff and Class members was a reasonably foreseeable result of T-Mobile's breach of its duties. T-Mobile knew or should have known that the breach of its duties would cause Plaintiff and Class members to suffer the foreseeable harms associated with the exposure of their sensitive personal information.

122.     As a direct and proximate result of T-Mobile's negligence *per se*, Plaintiff and Class members sustained damages as alleged herein. Plaintiff and Class members are entitled to compensatory and consequential damages suffered as a result of the Data Breach. Plaintiffs and Class members are also entitled to attorneys' fees to be taxed as costs of the case.

123.     Plaintiff and Class members are also entitled to injunctive relief requiring T-Mobile to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) provide free credit monitoring and identity theft insurance to all Class members.

### COUNT III
### FAILURE TO PROTECT THE CONFIDENTIALITY OF PROPRIETARY INFORMATION
### FCA Section 222, 47 U.S.C. § 222
### (on behalf of the Nationwide Class)

124.     Plaintiff re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

125.     T-Mobile is a common carrier engaged in interstate commerce by wire regulated by the FCA, 47 U.S.C. § 151 *et seq.*, including Section 206 and 222.

126.     Section 222(a) of the FCA, 47 U.S.C. § 222(a), requires every telecommunications carrier to protect, among other things, the confidentiality of proprietary information of, and relating to, customers, including CPNI information.

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 24

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

127.    T-Mobile failed to protect Plaintiff's and Class members' CPNI by allowing IMEI, user's T-Mobile PINs, and other data to be obtained illegally and without customer authorization by a hacker during the Data Breach.

128.    As a direct consequence of T-Mobile's failure, Plaintiff and Class members have sustained damages as alleged herein. Plaintiff and Class members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.  Plaintiffs and Class members are also entitled to attorneys' fees to be taxed as costs of the case.

129.    Plaintiff and Class members are also entitled to injunctive relief requiring T-Mobile to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) provide free credit monitoring and identity theft insurance to all Class members.

**COUNT IV**
**BREACH OF IMPLIED CONTRACT**
**(on behalf of the Nationwide Class)**

130.    Plaintiff re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

131.    When Plaintiff and Class members provided their sensitive personal information to T-Mobile in exchange for T-Mobile's services, they entered into implied contracts with T-Mobile under which T-Mobile agreed to take reasonable steps to protect their sensitive personal information.

132.    T-Mobile solicited and invited Plaintiff and Class members to provide their sensitive personal information as part of T-Mobile's regular business practices. Indeed, in order to sign up for many of T-Mobiles services, T-Mobile requires customers to provide personal information sufficient for T-Mobile to check the customer's credit score, such as a Social Security number, to obtain T-Mobile's services. Plaintiff and Class members accepted T-Mobile's offers and provided their sensitive personal information T-Mobile.

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 25

133.    When entering into the implied contracts, Plaintiff and Class members reasonably believed and expected that T-Mobile's data security practices complied with relevant laws, regulations, and industry standards.

134.    Plaintiff and Class members paid money to T-Mobile to purchase T-Mobile's services. Plaintiff and Class members reasonably believed and expected that T-Mobile would use part of those funds to obtain adequate data security. T-Mobile failed to do so.

135.    Plaintiff and Class members would not have provided their sensitive personal information to T-Mobile in the absence of T-Mobile's implied promise to keep their sensitive personal information reasonably secure.

136.    Plaintiff and Class members fully performed their obligations under the implied contracts by paying money to T-Mobile.

137.    T-Mobile breached its implied contracts with Plaintiff and Class members by failing to implement reasonable data security measures.

138.    As a direct and proximate result of T-Mobile's breaches of the implied contracts, Plaintiff and Class members sustained damages as alleged herein. Plaintiff and Class members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

139.    Plaintiff and Class members are also entitled to injunctive relief requiring T-Mobile to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) provide free credit monitoring and identity theft insurance to all Class members.

**COUNT V**
**UNJUST ENRICHMENT**
**(on behalf of the Nationwide Class)**

140.    Plaintiff re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 26

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

141.    Plaintiff and Class members conferred a monetary benefit upon T-Mobile in the form of monies paid for the purchase of items on T-Mobile.

142.    T-Mobile appreciated or had knowledge of the benefits conferred upon it by Plaintiff and Class members. T-Mobile also benefited from the receipt of Plaintiff's and Class members' sensitive personal information as this was utilized by T-Mobile to check Plaintiff's and Class members' credit score, send bills, and process payments for services, among other things.

143.    The monies Plaintiff and Class members paid to T-Mobile were supposed to be used by T-Mobile, in part, to pay for adequate data privacy infrastructure, practices, and procedures.

144.    As a result of T-Mobile's conduct, Plaintiff and Class members suffered actual damages in an amount equal to the difference in value between what they paid for (T-Mobile's services made with adequate data privacy and security practices and procedures), and what they actually received (T-Mobile's services without adequate data privacy and security practices and procedures).

145.    In equity and good conscience, T-Mobile should not be permitted to retain the money belonging to Plaintiff and Class members because T-Mobile failed to implement, or adequately implement, the data privacy and security practices and procedures that Plaintiff and Class members paid for and that were otherwise mandated by federal, state, and local laws and industry standards.

146.    T-Mobile should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class members all unlawful or inequitable proceeds received by it as a result of the conduct and Data Breach alleged herein.

## <u>COUNT VI</u>

**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**Cal. Bus. & Prof. Code §§ 17200,** *et seq.*

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 27

BORDE LAW PLLC
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

**(on behalf of the California Class)**

147.    Plaintiff re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

148.    T-Mobile is a "person" as defined by Cal. Bus. & Prof. Code §17201.

149.    T-Mobile violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

150.    T-Mobile's unlawful, unfair, and deceptive acts and practices include:

(a)    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and California Subclass members' sensitive personal information, directly and proximately causing the Data Breach, and omitting, suppressing, and concealing the material fact of that failure;

(b)    Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following well-publicized cybersecurity incidents, directly and proximate causing the Data Breach, and omitting, suppressing, and concealing the material fact of that failure;

(c)    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and California Subclass members' sensitive personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and the FCA, 47 U.S.C. § 222, which was a direct and proximate cause of the Data Breach and omitting, suppressing, and concealing the material fact of that failure;

(d)    Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and California Subclass members' sensitive personal information, including by implementing and maintaining reasonable security measures;

(e)    Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and California Subclass members' sensitive personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and the FCA, 47 U.S.C. § 222;

(f)    Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and California Subclass members' personal information; and

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

(g)    Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and California Subclass members' sensitive personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and the FCA, 47 U.S.C. § 222.

151.    T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of T-Mobile's data security and ability to protect the confidentiality of consumers' sensitive personal information.

152.    As a direct and proximate result of T-Mobile's unfair, unlawful, and fraudulent acts and practices, Plaintiff and California Subclass members were injured and lost money or property, including the premiums and/or price received by T-Mobile for its goods and services; the loss of the benefit of their bargain with T-Mobile, as they would not have paid T-Mobile for goods and services or would have paid less for such goods and services but for T-Mobile's violations alleged herein; losses from fraud and identity theft; costs for credit monitoring and identity protection services; wasted time and expenses related to monitoring their financial accounts for fraudulent activity; loss of value of their sensitive personal information; and an increased, imminent risk of fraud and identity theft.

153.    Plaintiff and California Subclass members seek all monetary and non-monetary relief allowed by law, including compensatory damages; restitution; disgorgement; punitive damages; injunctive relief; and reasonable attorneys' fees and costs.

## COUNT VII
## VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT
### Cal. Civ. Code §§ 1750, *et seq.*
### (on behalf of the Nationwide Class)

154.    Plaintiff re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

155.    The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA") is a comprehensive statutory scheme to protect consumers against unfair and deceptive

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 29

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

business practices in connection with the conduct of businesses providing goods, property or services to consumers primarily for personal, family, or household use.

156.    T-Mobile is a "person" as defined by Civil Code §§ 1761(c) and 1770 and has provided "services" as defined by Civil Code §§ 1761(b) and 1770.

157.    Civil Code section 1770, subdivision (a)(5) prohibits one who is involved in a transaction from "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have."

158.    Civil Code section 1770, subdivision (a)(7) prohibits one who is involved in a transaction from "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another."

159.    Plaintiff and the Class are "consumers" as defined by Civil Code §§ 1761(d) and 1770 and have engaged in a "transaction" as defined by Civil Code §§ 1761(e) and 1770.

160.    T-Mobile's acts and practices were intended to and did result in the sale of products and services to Plaintiff and the Class in violation of Civil Code § 1770, including, but not limited to, the following:

(a)    misrepresenting that its services would include reasonable security measures designed to protect the privacy and confidentiality of Plaintiff's and Class members' sensitive personal information;

(b)    misrepresenting that it would supply its services in conformity with its common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class members' sensitive personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and the FCA, 47 U.S.C. § 222;

(c)    omitting, suppressing, and concealing the material fact that in connection with providing its services it did not reasonably or adequately secure Plaintiff's and Class members' sensitive personal information; and

(d)    omitting, suppressing, and concealing the material fact that in connection with providing its services it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class members'

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 30

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

1
2

sensitive personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and the FCA, 47 U.S.C. § 222.

161.     T-Mobile's representations and omissions were material because they were

3

likely to and did deceive reasonable consumers about the adequacy of T-Mobile's data security

4

and ability to protect the confidentiality of customers' sensitive personal information.

5

162.     Had T-Mobile disclosed to Plaintiff and Class members that its data systems

6

were not secure and, thus, vulnerable to attack, T-Mobile would have been unable to continue

7

in business and it would have been forced to adopt reasonable data security measures and

8

comply with the law. Instead, T-Mobile received, maintained, and compiled Plaintiff's and

9

Class's sensitive personal information as part of the services T-Mobile provided and for which

10

Plaintiff and Class members paid without advising Plaintiff and Class members that T-

11

Mobile's data security practices were insufficient to maintain the safety and confidentiality of

12

Plaintiff's and Class members' sensitive personal information. Accordingly, Plaintiff and the

13

Class acted reasonably in relying on T-Mobile's misrepresentations and omissions, the truth

14

of which they could not have discovered.

15

163.     As a direct and proximate result of T-Mobile's violations of California Civil

16

Code § 1770, Plaintiff and Class members have suffered and will continue to suffer injury,

17

ascertainable losses of money or property, and monetary and non-monetary damages, including

18

loss of the benefit of their bargain with T-Mobile as they would not have paid T-Mobile for

19

goods and services or would have paid less for such goods and services but for T-Mobile's

20

violations alleged herein; losses from fraud and identity theft; costs for credit monitoring and

21

identity protection services; time and expenses related to monitoring their financial accounts

22

for fraudulent activity; loss of value of their sensitive personal information; and an increased,

23

imminent risk of fraud and identity theft.

24
25

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

164.     Plaintiff, individually and on behalf of the Class, seeks an injunction requiring Defendant to adopt reasonable and sufficient data security measures designed to protect and secure Plaintiff's and the Class members' sensitive personal information.

165.     Pursuant to Cal. Civ. Code § 1782(a), Plaintiff served Defendant with notice of its alleged violations of the CLRA by certified mail return receipt requested. If, within thirty days after the date of such notification, Defendant fails to provide appropriate relief for its violations of the CLRA, Plaintiff will amend this Complaint to seek monetary damages.

## COUNT VIII

### VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT
Cal. Civ. Code § 1798.100, *et seq.*
**(On Behalf of the California Subclass)**

166.     Plaintiff re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

167.     California's Consumer Privacy Act ("CCPA") was recently enacted to protect consumers' personal information from collection and use by businesses without appropriate notice and consent.

168.     Cal. Civ. Code § 1798.150(a)(1) provides that "any consumer whose nonencrypted and nonredacted personal information . . . is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information" may commence a civil action for any of the following:

(a)     Damages, not less than $100 and not greater than $750 per consumer per incident, or actual damages, whichever is greater;

(b)     Injunctive or declaratory relief; and

(c)     Any other relief the Court deems proper.

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 32

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

169.    Plaintiff and Subclass members provided T-Mobile with nonencrypted and nonredacted personal information, as defined in Cal. Civ. Code § 1798.81.5(d).

170.    As alleged herein, Plaintiff's and Subclass members' nonencrypted and nonredacted personal information was subject to unauthorized access, exfiltration, theft, and disclosure, when it was stolen by cyber criminals as a result of the Data Breach caused by T-Mobile.

171.    The unauthorized access, exfiltration, theft, and disclosure, of Plaintiff's and Subclass members' sensitive personal information was a direct result of T-Mobile's failure to implement and maintain reasonable security procedures appropriate to the nature of the information they stored and collected.

172.    As a direct and proximate result of T-Mobile's violations of the CCPA, Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including loss of the benefit of their bargain with T-Mobile, as they would not have paid T-Mobile for goods and services or would have paid less for such goods and services but for T-Mobile's violations alleged herein; losses from fraud and identity theft; costs for credit monitoring and identity protection services; time and expenses related to monitoring their financial accounts for fraudulent activity; loss of value of their personal information; and an increased, imminent risk of fraud and identity theft.

173.    Plaintiff, individually and on behalf of the Subclass, seek an injunction requiring Defendant to adopt reasonable and sufficient data security measures designed to protect and secure Plaintiff's and the California Subclass members' sensitive personal information, as well as actual damages on behalf themselves and the Class.

174.    Pursuant to Cal. Civ. Code § 1798.150(b), Plaintiff served Defendant with notice of the specific provisions of the CCPA Defendant has violated by certified mail return receipt requested. If, within thirty days after the date of such notification, Defendant fails to provide

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 33

BORDE LAW PLLC
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

appropriate relief for its violations of the CCPA, Plaintiff will amend this Complaint to seek statutory damages on behalf of himself and the Subclass.

<u>COUNT IX</u>

**VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT**
**RCW 19.86.010, *et. seq.***
**(On Behalf of the Nationwide Class)**

175.    Plaintiff re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

176.    The Washington Consumer Protection Act ("CPA") protects consumers by declaring unlawful all unfair methods of competition and unfair or deceptive acts or practices in commercial markets for goods and services. *See* RCW 19.86.020.

177.    As alleged herein, T-Mobile has consistently maintained subpar security and privacy measures for the use and retention of its consumers' sensitive personal information. These practices were both unfair and deceptive.

178.    Specifically, T-Mobile engaged in unfair acts and practices in violation of the CPA by failing to implement and maintain reasonable security measures to protect consumers' sensitive personal information, including its failure to remedy the previous deficiencies in its systems and servers that had caused multiple, other data breaches.

179.    T-Mobile has statutory, regulatory, and common law obligations to prevent the foreseeable risk of harm to others, including Plaintiff and the Class, arising out of their retention of consumers' sensitive personal information.

180.    At all times it was foreseeable that T-Mobile's failure to adopt reasonable security measures to protect consumers' sensitive personal information would cause harm to Plaintiff and Class members and place Plaintiff and Class members at a substantial risk of fraud and identity theft.

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 34

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

181.    T-Mobile's failure to implement and maintain reasonable security measures to protect consumers' sensitive personal information and failure to comply with its statutory, regulatory, and common law obligations were likely to, and did, cause substantial injury to Plaintiff and the Class. T-Mobile's consistent failure to remedy its deficient security measures serve no countervailing benefit to consumers or competition.

182.    T-Mobile had sole responsibility for securing its customers' sensitive personal information and exclusive knowledge of its deficient security measures. There was no way for Plaintiff or the Class to know about T-Mobile's severely deficient security practices or to avoid their injuries.

183.    Further, T-Mobile's failure to inform Plaintiff and the Class of its inadequate security practices—which were exclusively known by T-Mobile—and its failure to comply with its obligations to adopt reasonable security measures constitute deceptive acts and practices in violation of the CPA. By offering services to Plaintiff and Class members that would require handing over sensitive personal information, Plaintiff and Class members reasonably believed that T-Mobile would have sufficient security measures in place to protect this information, including sufficient practices and policies for the use, retention, and disclosure of this sensitive personal information to protect against the foreseeable threat of a data breach and resulting harm. In light of the foreseeable risk of harm to consumers, Plaintiff and Class members reasonably believed that T-Mobile would use reasonable practices to protect consumers' sensitive personal information. T-Mobile had a duty to disclose that its data security measures were insufficient to protect consumers' sensitive personal information but failed to do so. T-Mobile's acts, omissions, and practices were likely to and did mislead Plaintiff and the Class.

184.    As a direct and proximate result of T-Mobile's violations of the CPA, Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including loss of the benefit of

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 35

BORDE LAW PLLC
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

their bargain with T-Mobile as they would not have paid T-Mobile for goods and services or would have paid less for such goods and services but for T-Mobile's violations alleged herein; losses from fraud and identity theft; costs for credit monitoring and identity protection services; time and expenses related to monitoring their financial accounts for fraudulent activity; loss of value of their sensitive personal information; and an increased, imminent risk of fraud and identity theft.

185.    As a result, Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including compensatory damages; statutory damages; restitution; disgorgement; punitive damages; injunctive relief; and reasonable attorneys' fees and costs.

## COUNT X

### DECLARATORY AND INJUNCTIVE RELIEF
### (On Behalf of the Nationwide Class)

186.    Plaintiff re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

187.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the statutes described in this Complaint.

188.    An actual controversy has arisen in the wake of the Data Breach regarding T-Mobile's present and prospective common law and statutory duties to reasonably safeguard its customers' sensitive personal information and whether T-Mobile is currently maintaining data security measures adequate to protect Plaintiff and Class members from further data breaches. Plaintiff alleges that T-Mobile's data security practices remain inadequate.

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 36

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

189.    Plaintiff and Class members continue to suffer injury as a result of the compromise of their sensitive personal information and remain at imminent risk that further compromises of their personal information will occur in the future.

190.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring that T-Mobile continues to owe a legal duty to secure consumers' sensitive personal information, to timely notify consumers of any data breach, and to establish and implement data security measures that are adequate to secure customers' sensitive personal information.

191.    The Court also should issue corresponding prospective injunctive relief requiring T-Mobile to employ adequate security protocols consistent with law and industry standards to protect consumers' sensitive personal information.

192.    If an injunction is not issued, Plaintiff and Class members will suffer irreparable injury, for which they lack an adequate legal remedy. The threat of another data breach is real, immediate, and substantial. If another breach at T-Mobile occurs, Plaintiff and Class members will not have an adequate remedy at law, because not all of the resulting injuries are readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

193.    The hardship to Plaintiff and Class members if an injunction does not issue greatly exceeds the hardship to T-Mobile if an injunction is issued. If another data breach occurs at T-Mobile, Plaintiff and Class members will likely be subjected to substantial identify theft and other damages. On the other hand, the cost to T-Mobile of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and T-Mobile has a pre-existing legal obligation to employ such measures.

194.    Issuance of the requested injunction will serve the public interest by preventing another data breach at T-Mobile, thus eliminating the additional injuries that would result to

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 37

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

Plaintiff and the millions of consumers whose confidential information would be further compromised.

## RELIEF REQUESTED

Plaintiff, on behalf of all others similarly situated, request that the Court enter judgment against T-Mobile including the following:

A.   Determining that this matter may proceed as a class action and certifying the Classes asserted herein;

B.   Appointing Plaintiff as representative of the applicable Classes and appointing Plaintiff's counsel as Class counsel;

C.   An award to Plaintiff and the Classes of compensatory, consequential, statutory, restitutionary, and treble damages as set forth above;

D.   Ordering injunctive relief requiring T-Mobile to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; (iii) provide several years of free credit monitoring and identity theft insurance to all Class members; (iv) timely notify consumers of any future data breaches; and (v) delete or destroy any legacy consumer data that it is not necessary to keep for business purposes;

E.   Entering a declaratory judgment stating that T-Mobile owes a legal duty to secure consumers' sensitive personal information, to timely notify consumers of any data breach, and to establish and implement data security measures that are adequate to secure customers' sensitive personal information;

F.   An award of attorneys' fees, costs, and expenses, as provided by law or equity;

G.   An award of pre-judgment and post-judgment interest, as provided by law or equity; and

H.   Such other relief as the Court may allow.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129

DATED this 3rd day of September, 2021.

**BORDE LAW PLLC**

By: s/ Manish Borde
Manish Borde, WSBA #39503
600 Stewart St., 400
Seattle, WA 98101
Telephone: (206) 905-6129
E-mail: mborde@bordelaw.com

**LAW OFFICES OF RONALD MARRON**

By: s/ Kas L. Gallucci
Ronald A. Marron (*pro hac vice forthcoming*)
Alexis M. Wood (*pro hac vice forthcoming*)
Kas L. Gallucci (*pro hac vice forthcoming*)
651 Arroyo Drive
San Diego, CA 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665
E-mail: ron@consumersadvocates.com
alexis@consumersadvocates.com
kas@consumersadvocates.com

**LOWEY DANNENBERG, P.C.**

By: s/ Margaret MacLean
Margaret MacLean (*pro hac vice forthcoming*)
Christian Lewis (*pro hac vice forthcoming*)
Amanda Fiorilla (*pro hac vice forthcoming*)
44 South Broadway, Ste. 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
E-mail: mmaclean@lowey.com

clevis@lowey.com
afiorilla@lowey.com

**ATTORNEYS FOR PLAINTIFF and the Proposed Classes**

COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 40

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 905-6129